Good morning, may it please the court. My name is Adam Gutride and with my partner Seth Saphir, I represent the plaintiff appellant Chris Chavez. I'd like to reserve three minutes for rebuttal. In this case, the defendants sold more than $25 million worth of premium natural and organic sodas with false representations as to their origin. For that reason, the complaint sought restitution of that entire amount plus damages, which is why there exists federal jurisdiction under the Class Action Fairness Act. And unless the court has further questions about the subject matter jurisdiction, I will proceed to the arguments that were raised by the parties. I think the letter briefs we received sufficiently explore that issue. Thank you, Your Honor. First, I'd like to briefly address the issue of federal preemption under the Food, Drug, and Cosmetic Act. As we pointed out in our letter brief under Rule 28J, there are two recent cases on point. The first is tangentially on point. That's the Supreme Court case of Altria Group, which, again, emphasized that the touchstone of determining federal preemption is congressional intent. There has not been a case cited in your brief? They're cited in the Rule 28J letter because they post-state the brief. All right. There is no evidence of congressional intent to preempt any State law at issue here. The California Supreme Court just addressed this question in the farm-raised salmon cases. That's also cited in our letter brief. And the California Supreme Court explained that there is an express preemption provision in the Food, Drug, and Cosmetic Act, the FDCA, which is 21 U.S.C. 343-1. That statute bars certain State laws of the type set forth in enumerated sections of the FDCA. But it gives an exemption for any State laws that merely replicate the federal regime. Well, what State law replicates the federal regime? The advertising statutes you refer to? In this case, Your Honor, there is a State law that does replicate the federal regime, and that is not cited by the parties so far. But that's California Health and Safety Code, Section 110-675. That section states that a food is misbranded if its label does not bear the true name and place of the business of the manufacturer, hacker, or distributor. That section exactly replicates 21 CFR 101.5, which is the enabling regulation enacted under the Food, Drug, and Cosmetic Act. Beyond that replication, though, Your Honor, the — as the California Supreme Court explained, Section 343-1 of the FDCA only bars statutes that have certain enumerated types. And one of the types that's not enumerated, and therefore it is not preempted, are statutes that say that false or misleading packaging is in there. The district court didn't rule on that issue at all. That is correct. It was not a basis. And you can — I don't think you can expect us to rule on that issue either, to be honest. But I think you better spend some time as to whether or not your comments have standing. And while you're at it, this is a — seems to me a very circumscribed type of action. Your client happens to be from New Mexico who moved into California and likes New Mexico products. I don't think there's anybody else in the country that would fit that description, if you don't mind my saying so. Now, tell me why you've got standing. Your Honor, the reason that standing exists is because the — in order to have standing, you need to show a loss of money or property, an injury in fact. The California courts, in the cases that are cited again in our letter brief, the most recent cases from 2008, make clear that if the plaintiff pleads that he would not have purchased the product in the absence of the false advertising, he has alleged an injury in fact, assuming that he actually spent money on the product. They also make clear that as an alternative, if the plaintiff pleads that the price that he paid for the product was greater than it would have been in the absence of false advertising. Did it ever occur to you that there might be a defense? By understanding, the product is now being put together in Colorado and Minnesota. Yes, Your Honor. And Colorado has a wonderful mountain water, and Minnesota, where I was born and raised, brags about the beautiful waters and pure waters of 10,000 lakes. They used to have beer of it, ham's beer. So maybe your client got a better product than what he bargained for. I suppose that that could be something that defendants seek to prove, but that's not really an issue on the pleading stage of this litigation. These sodas are also manufactured in the Los Angeles area, and furthermore. Our water is not very good at all. Sorry to hear that, Your Honor. So as a pleading matter, the plaintiff has alleged that these sodas were priced higher because they were from New Mexico, just as Your Honor's example. Certain beers prominently display where they're from. Certain sparkling waters do. Juices and other sorts of beverages. This is a premium type of soda. It's natural and organic soda that's marketed in a very specific way to people who actually care about these origin representations. Now, the reason that the case law says what we've set forth in our briefs is because if it didn't say that, Your Honor, there would never be, there would be many, many types of false advertising cases that would not be able to get past the pleading stages that most of us would agree are valid cases. For example, a plaintiff alleges that he was offered a television set with a series of ten features, but in fact, it only has eight of those features. Now, the defendant should not be permitted to say, well, the eight-feature television set is worth the price he paid for it. In other words, he couldn't have gotten that set for that price. He doesn't allege any difference in taste. As I get the complaint, he really wants to buy a support New Mexico, even though I live in California. And I'm not sure that is an injury in fact. Well, it's an injury in fact, Your Honor, because he spent the money on the product and he didn't get what he was promised, just like purchasing any other product. Did he drink the soda? I don't actually know, Your Honor, if he did, Your Honor. Wouldn't that make a difference? I mean, all these people that think that they were damaged because of that difference, but they drink the soda, what are the damages? The damages is two things, Your Honor. Number one is the differential in price between what they would have paid in the absence of the false advertising. And for those people, I suppose this leaves aside the example you gave, but for those people who are entitled to restitution, they could get the full purchase price back. I only have two minutes remaining. If they get the full purchase price, do they drink the soda? If they drank the soda, they might not be able to, Your Honor. Again, that's not really an issue on the pleadings. This class, we're talking about people who may have had that same feeling about it, but didn't drink the soda. It may be that a subclass has to be defined in that way. Again, it's preliminary to get to that stage, Your Honor. Doesn't he have to show that there would be some other soda that he'd really like to drink, which was equal, and have to show that that price was less than the wonderful product that he's been drinking for years? If necessary, we can show that. These defendants make almost identical or identical products. Without that representation, they sell them for less money. I'd like to reserve the balance of my time. Thank you. So what you're really assuming, if I understand your position, basically what you're saying is you're entitled to go ahead because you have one client who may be able to show damages, regardless of whether or not, but he may be able to show damages, and then there are hundreds of thousands of other people similarly situated so that you've got a $5 million floor to sustain. I know you don't have to collect $5 million, but that's a jurisdictional amount. That's your theory, isn't it? Yes, Your Honor. All right. May it please the Court. Good morning, Your Honors. I'm Bill Cameron. I represent the three defendants, Blue Sky Natural Beverage, Hanson Beverage. Just a little. It's hard to hear you. Yeah, you have to speak in the mic for me because I've got an amplifier here. I thought I was. Is this better? You're doing fine now. It's a shame we don't bottle some of these beverages in Utah so we could get three votes on the water quality, but I represent the three defendants, Blue Sky Natural Beverage Company, Hanson Beverage Company, and Hanson Natural Corporation. I had outlined this and said there were three issues before the Court, but the Court has resolved, apparently, the CAFRA concerns, and Your Honor has correctly noted that preemption was not part of Judge Conte's ruling so that we're really at this point of reaching this question of injury in fact. And the briefs, I think, having been back through them quite carefully, were a pretty good exposition of the issues as of the time they were written, which was about the end of 2007. Let me just ask you, before you get to that, what are you saying about preemption? You don't want us to decide it? I think His Honor is correct. Of course you can decide. I mean, that would be fundamentally within your public interest. The brief you asked us to, I thought. I asked you to, but then we did not have farm-raised salmon at the time. I happen to think that this Court can construct its own opinion of preemption, whether the Federal Food, Drug, and Cosmetic Act has preempted the field. You know, I would like this Court to do that, because when you're bottling and selling product across the nation, dealing with labeling requirements in 50 different states. I know you'd like us to decide it in your favor, but the question is, would you like us to decide it? Are you now asking us to decide the issue if you lose on the primary issue, or are you no longer asking us to decide it? I'm not prepared. The Supreme Court's exposition in farm- Just say yes or no. That's okay. Do you want us to decide it? Yes, I do. Yes, I do. You still do want us to? Yes, I do. Okay. And I would distinguish farm-raised salmon by saying it's a perfect exercise of the state's power. The problem there was the inclusion of chemicals and additives without a label disclosing their presence. That's not the situation we're dealing with with the trade dress of this particular package. But I think the Court is focused on what I believe to be the principal issue, which is injury in fact. Injury in fact comes from Proposition 64, which was effective in November of 2004, and consequently there's very little case law in California. There is no Supreme Court decision as to what exactly injury in fact and lost property or money means in the context of the unfair competition law and the false advertising laws of the state. But we do have appellate decisions, which my opponents have correctly noted to you, that have occurred since we briefed the issue. And on the question of having bought the product, I think the most telling of those are the Hall v. Time-Light case and the Medina v. Safeguard. In Hall, he was, from his point of view, victimized by getting into a book scheme where if he kept the book long enough he had to buy it. But Hall bought the book, and when the Court of Appeals dealt with the issue of injury in fact, they said that under those circumstances he had gotten exactly what he had paid for. They made three points at page 855. He didn't say that he didn't want the book in the first place. He didn't allege that the book was unsatisfactory or that it was worth less than what he had paid for. And the Court in that case, the Appellate Court of the State of California, concluded that he did not meet the injury in fact requirement. Aren't they saying here that it's worth less than he paid for it? That's not what they said in the complaint. The complaint alleges that he wants all of his money back because he mistook a product as being from New Mexico and was unable to aid the New Mexico. He wanted to associate with New Mexico, and he wanted to do something good for New Mexico, sort of third-party beneficiary theories. But he didn't allege in the complaint that it's worth less when it doesn't come from New Mexico? I don't think so. Paragraph 28 of the complaint is the one where he says that he was deprived of his opportunity to associate himself with the New Mexico company or to associate himself with New Mexico and to essentially boost the New Mexican economy. I haven't read all the cases, obviously, but will. There's a very famous California case, which is Made in America. Justice Mosk wrote, doesn't that case support a plaintiff's view that if there's a false statement in advertising as far as the consumer is concerned, it is a matter that enters into how much you would pay for almost automatically? Yes, Your Honor. The Made in USA case turns on specific labeling statutes. The federal government actually allows you to market something made in the USA with the small percentage of foreign components. California's statute is not that generous, and so the decision within the state of California on that issue was that the inclusion, even a screw or a watch stem, would be sufficient to violate the statute, and because they each had their own labeling statutes, they found that the Made in USA requirements of the federal statutes and regulations did not preempt the field to allow California or to prohibit California from further regulating what it was. Well, I thought in that case the opponents relied on it to show that the plaintiff sustained damage. In that case, the plaintiff sustained damage, but I think it's different conceptually than our case in the comparison of the Hall case. And then Medina was another case they cited. Mr. Medina bought a BMW, and with it he bought a form of tire and wheel insurance. Well, let me give you what I think might be a different kind of example. Up in North Dakota, if I may use that allusion, we have North Dakota products. Well, I'll give you a better one. Wild rice can be gleaned from two sources up in the north. One is the Indians harvest wild rice. The other is domestically produced wild rice. And the wild rice produced domestically is actually much better tasting than the Indian wild rice. But Indian wild rice produces a premium because people want to support the Indians and their work up there in northern Minnesota. Isn't that kind of the same kind of a thing, that you pay more money because of what the labeling is? I don't think under the circumstances of this case that that's an apt analogy. I went to a delicatessen last night to get a sandwich, and I saw Francisco Bread, which is a brand I happen to use at home as well. And out of curiosity, I looked and I found it was made, even though it's got a picture of the Golden Gate Bridge and proudly says Francisco on the loaf, it's made by Bimbo Bakeries of Fort Worth, Texas. This business of style, of dress, there's no representation on the label that this product was originated in Santa Fe or contained water from Santa Fe. It was even bottled there. It was just bottled under the authority. If you look at a Coke can, it's bottled under the authority of Coca-Cola of Atlanta by a member of the Coca-Cola Bottling Enterprises, Atlanta GA. And we all know that those are being bottled all over the nation. So the style of dress, whether it's potato chips that look Hawaiian or bread that looks Francisco or boudin, which is a popular sourdough that's baked all over the state in many cafes, and yet calls itself the original San Francisco bread. That's the sticky thicket that I think this case develops into. And the BMW case, the Medina case that counsel had cited in his letter brief of January the 6th, Mr. Medina bought a BMW, and the sale of the accompanying tire and wheel insurance was issued in violation of the state laws of California for insurance. So there was an illegal act. And so he sued under these same laws for the particular violation of that statute, the fact that it was uninsured, I mean an unadmitted insurer. And the court concluded that there was no problem with the transaction because he got exactly what he bought. At page 1592, they say the plaintiff does not allege they were dissatisfied with the insurance or were uninformed of its price. And that's another case where California is construing Proposition 64 to say your basic position is that, again, it is looking at the facts alleged. This plaintiff does not show any damages. Is that basically what you're saying? Yes, Your Honor. The standing requirements, you know, basically say that you can't have speculative injury, you can't have conjectural injury, you can't have hypothetical injury. It must be real and palpable. And I thought your earlier questions about did he drink it, you know, this is a plaintiff who alleges he began drinking this brand in California in the year 2000, and he didn't sue for five or six years. So assuming that he was buying this beverage in that entire period of time, and it didn't rise to a level of concern until quite late in his drinking pattern. I have a stoplight. Thank you, Your Honor. Thank you, counsel. Where is the allegation that it would have been less expensive? It's paragraph 60 of the complaint. It appears on page 26 of the record, paragraph 60 of the complaint, page 26 of the record. What does that say? It says that in the absence of the misrepresentation of the origin, that defendants would not have sold the Blue Sky beverages that they did in fact sell and that any sales would have occurred at lower prices than they did. Well, that's a general allegation for the class, but doesn't say anything about the plaintiff. That's why we sought leave to amend, Your Honor, in response to the initial motion to dismiss, and we are still seeking that. The Kwikset case, Your Honors, is also directly on point. Doesn't it necessarily follow that if it would have been sold for less that those who bought it paid more? Yes, Your Honors. Yes, Your Honor. It does follow. If further pleading is necessary, we're happy to make it. It does follow directly. I just wanted to highlight again the Kwikset case, which is right on point, that the Court of Appeal from California says that we must view this, quote, from the perspective of those consumers for whom the geographic designation is important. Now, what was that case again? That's Benson v. Kwikset. It's in your brief. It is, Your Honor. Thank you very much. Thank you, counsel. The case is arguably submitted.
judges: Hug, Reinhardt, Bright